**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**RONNIE TOWNER**                                                                        **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 3:18CV459 DPJ-LRA**

**NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff appeals the final decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI). The Commissioner requests an order pursuant to 42 U.S.C. §405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this cause be remanded.

In November 2014, Plaintiff filed initial applications for SSI and DIB alleging a disability onset date of September 18, 2013, due to heart problems, diabetes, and high blood pressure. He was 45 years old on his alleged onset date, with a twelfth-grade education and past relevant work experience as a forklift operator. Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's cardiac disorders, right knee osteoarthritis, degenerative joint disease, and post-stroke weakness were severe, they did not meet or medically equal any listing. The ALJ additionally found that Plaintiff's depressive, mood, and anxiety disorders were not severe. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work, with the following limitations. He can:

> lift or carry 20 lbs. occasionally and 10 lbs. frequently, stand or walk for 3 hours of an 8-hour day for 15 minutes at a time, and sit for 6 hours of an 8-hour day for 2 hours at a time. The claimant also can occasionally stoop or climb; cannot crouch, kneel, or crawl; can push or pull less than 10 lbs. with the right upper extremity and right lower extremity; can occasionally reach overhead with the right upper extremity; has occasional numbness in the right upper extremity during which he cannot feel texture; and must avoid heights, hazardous machines, ladders, and commercial driving. In addition, the claimant is illiterate.[2]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a wire-worker, inspector-checker, and assembler.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 7, p. 24.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff alleges that errors were made at steps two and five of the sequential evaluation that warrant reversal or remand of this case. He alleges the ALJ erred in failing to find his depressive, anxiety and mood disorders were severe at step two. He also charges that the ALJ's step-five finding is unsupported because he failed to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") in violation of Social Security Policy Interpretation Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2. The undersigned addresses each of these in turn.

1.

At step two of the sequential evaluation, the ALJ concluded that Plaintiff's depressive, anxiety, and mood disorders were not severe because Plaintiff failed to make a *de minimis* showing of severity in the four broad areas of mental functioning: (1) understanding, remembering or applying information; (2) concentration, persisting, or maintaining pace; (3) interacting with others; and, (4) adapting or managing oneself. Although the ALJ found there was insufficient evidence of limitations in each of these areas, it is the ALJ's determination concerning the first two that Plaintiff contests.

Plaintiff submits that the ALJ's conclusion that he has no limitations in remembering information or maintaining concentration is contradicted by his records from Weems Community Mental Health Center – his primary mental health provider. He notes that of his 17 dates of mental health treatment, in the ten visits where objective findings were made regarding concentration, it was rated as "intact" only once and poor the remaining nine times, with Plaintiff self-reporting difficulties the rest of the time. His memory was also rated "poor" the majority of the time. Notwithstanding this evidence, Plaintiff charges the ALJ selectively chose only the evidence that supported his position in contravention of controlling precedent and social security rulings and regulations. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).[3]

It is well-established law that while an ALJ is not required to discuss every piece of evidence in evaluating a disability claim, he may not ignore probative evidence. *Id.* at

---

[3] ECF No. 7, pp. 338-374, 466-79.

393; *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). However, the mere diagnosis of an impairment is insufficient to establish severity. "[A]n impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Stone v. Heckler*, 452 F.2d 1099, 1101 (5th Cir. 1985) (internal quotation marks omitted)). At step two of the sequential evaluation, the claimant bears the burden of proving not only that he has been diagnosed with a medically determinable impairment, but that it also affects his ability to do basic work activities. *Brunson v. Astrue*, 387 F. App'x. 459, 461 (5th Cir. 2010) (per curiam). The relevant inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza*, 219 F.2d at 393.

The ALJ's severity analysis acknowledges that Plaintiff "exhibited poor concentration on occasions during the period under consideration" but such evidence must be considered in the context of the record as a whole. He explained that "[a]lthough claimant's treatment records indicate that the claimant exhibited some concentration problems from October of 2013 to March 2014, the claimant's treatment records from other times during the period under consideration indicate he displayed normal mental findings and make no mention of difficulty in concentrating."[4] He then goes on to note that:

> Otherwise, the claimant's treatment records document findings such as appropriate affect, appropriate speech, cooperative attitude, logical thought

---

[4] ECF No. 7. p. 23.

5

content, normal perception, no impairment of self-concept, full orientation, intact judgment, alertness, normal affect, and normal insight. Therefore, the symptoms indicated during the aforementioned period did not persist throughout the period under consideration, and findings from throughout the bulk of the period under consideration support the conclusion that the claimant has experienced no significant and persistent mental restrictions.[5]

Having reviewed the record carefully, including those highlighted in Plaintiff's memorandum brief, the undersigned finds no basis in the ALJ's reasoning or interpretation of the evidence to warrant reversal or remand. "The fact that there may have been some contrary evidence in the record to support a finding that [Plaintiff's depression] was a severe impairment does not undermine the ALJ's determination." *Bayer v. Colvin*, 557 F. App'x 280, 287-288 (5th Cir. 2014).

There is no dispute that Plaintiff has not pursued or required ongoing mental health treatment since March 2014. A claimant's failure to maintain treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount complaints of disabling pain. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Moreover, despite Plaintiff's reports of memory and concentration problems, the ALJ noted that he was able to persist and concentrate during the administrative hearing. These are "precisely the kinds of determinations that the ALJ is best positioned to make," as he or she can observe the claimant first-hand. *Olguin v. Barnhart*, 31 F. App'x 838 (5th Cir. 2002); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Plaintiff also failed to mention a mental health disorder as a reason for his

---

[5] ECF No. 7, pp. 26, 338-74, 466-631.

inability to work at the administrative hearing, nor list it as a basis for disability in his applications. Lastly, no examining or treating source of record concluded that Plaintiff's mental disorders would be expected to interfere with his ability to work.

The undersigned is mindful that the severity threshold requires the claimant to make a fairly *de minimis* showing, but "[w]e do not "reweigh the evidence or substitute [our] judgment for the Commissioner's." *Botsay v. Colvin*, 658 F. App'x 715, 717 (5th Cir. 2017) (quoting *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005)). The ALJ's step-two finding does not warrant reversal or remand.

### 2.

Plaintiff also alleges that remand is warranted because the ALJ's step-five determination is not supported by substantial evidence. At the fifth step of the sequential evaluation, the Commissioner may take administrative notice of reliable job information available from the DOT. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C III (4th ed. 1991), 1991 WL 688702; 20 C.F.R. § 404.1566(d). However, the ALJ is not bound by DOT classifications. The Fifth Circuit has long "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (internal citations omitted). Unlike the DOT, which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job."

*Fields v. Bowen,* 805 F.2d 1168, 1170-71 (5th Cir. 1986). In *Carey*, the Fifth Circuit explained that:

> [W]e agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

230 F.3d at 146-47. Thus, even if the vocational expert's testimony differs from the DOT, the testimony may constitute substantial evidence upon which the ALJ can rely to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. *Id.*

Plaintiff asserts the burden was not met here because the ALJ's determination that he could perform work as a wire worker, inspector-checker, and an assembler is based on an unresolved conflict between the vocational expert's testimony and DOT literacy requirements for each of these jobs. The regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 416.964(b)(1) ("We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."). Yet, the DOT provides that the language requirements for each of the cited positions require Level 2 Language Development, meaning Plaintiff is expected to, *inter alia*, read 190-215 words per minute, and write compound and complex sentences. *Dictionary of Occupational Titles,* 1991 WL 688702.

Substantial evidence supports the ALJ's illiteracy finding in this case. In response to questioning by both counsel and the ALJ, Plaintiff testified at the administrative hearing that he could read "some words" but not without assistance. School records reflect that he completed the twelfth grade, but he testified that he was in special education classes and received help with reading. He also indicated on social security forms that he could read and understand English but testified that his wife helped him fill out the forms because he cannot write more than his name.

Based on this evidence, the ALJ asked the vocational expert, who was present for Plaintiff's testimony, whether a claimant who is "essentially illiterate" with Plaintiff's physical residual functional capacity could perform the jobs identified. Plaintiff submits that the vocational expert's affirmative response not only conflicts with the DOT, but that the conflict is "imminently apparent" and the ALJ's failure to resolve it pursuant to SSR 00-4p was prejudicial.[6]

SSR 00-4p places an affirmative duty on ALJs to inquire and obtain explanations for apparent conflicts between the vocational expert testimony and the DOT at the administrative hearing, and to explain how any identified conflicts were resolved in their written decision. SSR 00-4p, 2000 WL 1898704, *4.[7] *Graves v. Colvin*, 837 F.3d 589,

---

[6] ECF No. 7, pp. 7-95.

[7] The ruling provides as follows:

> The Responsibility To Ask About Conflicts
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict

9

592 (5th Cir. 2016) (holding under SSR 00-4p that an ALJ must inquire into "any possible conflict" between the VE conclusions and DOT). The transcript reflects the following relevant exchange between the ALJ and the vocational expert in this case:

> Q: Hypothetical #2 is the same as hypothetical #1 except if the Claimant were, essentially, illiterate, would they be able to do those jobs?
>
> A: Judge, I would say yes.
>
> Q: Okay. Is the evidence you provided in conflict with information contained in the Dictionary of Occupational Titles?
>
> A: Judge, a couple of elements, the DOT does not differentiate between one arm or two arms or legs for the pushing and pulling and reaching overhead, and my testimony regarding that aspect, as well as the reduced standing and walking that you provided, and my testimony regarding those areas would be based upon my education, training, experience, and familiarity with work and workplace requirements.[8]

---

between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4P, 2000 WL 1898704, at *4.

[8] ECF No. 7, pp. 99-100.

The above exchange makes clear that the ALJ asked the vocational expert to identify inconsistencies between her testimony and the DOT in compliance with SSR 00-4p. But as Plaintiff points out, the vocational expert identified inconsistencies between Plaintiff's physical limitations and the DOT, but she did not expressly identify any variance between the language levels contemplated by the DOT and Plaintiff's literacy. While the undersigned submits the exchange reflects the vocational expert considered the impact of Plaintiff's illiteracy on his ability to perform the jobs identified, reasonable minds may disagree. There is no dispute, however, that the ALJ failed to elicit an on-the-record explanation for the vocational expert's statement that Plaintiff would still be able to do the jobs identified despite his illiteracy. The ALJ also concluded, without elaboration, that the testimony was consistent with the DOT in his written decision. SSR 00-4p, 2000 WL 1898704, at *2. (explaining that the ALJ must resolve the conflict between the DOT and the VE's testimony "by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information").

Assuming arguendo the Court finds the ALJ's failure to discover and address conflicts between the vocational expert's testimony and the DOT was a violation of SSR 00-4p, Plaintiff is not entitled to relief unless he can establish that he has been prejudiced by the alleged error. In its most recent decision addressing step-five conflicts, the Fifth Circuit in *Graves v. Colvin*, affirmed the lower court's judgment where the claimant did "not even attempt to show the vocational expert's testimony was actually inconsistent with the DOT." 837 F.3d at 589, 593. *See also DeLeon v. Barnhart*, 174 F. App'x. 201,

11

203 (5th Cir. 2006) (per curiam); *Olive v. Colvin*, No. 16-559, 2017 WL 1653303 (E.D. La. Mar. 31, 2017); *Ruffin v. Colvin*, No. 3:16cv18 DPJ-LRA, 2017 WL 536549, at *3 (S.D. Miss., Feb. 8, 2017).  Plaintiff appears to have made this showing here.

Numerous district and appellate courts agree that an illiteracy finding conflicts with DOT literacy requirements, but not all agree that reversal or remand is mandated. This is because a claimant is not *per se* disabled because of illiteracy.  Under the DOT, every job in the national economy requires at least Language Development Level 1, so a vocational expert's opinion that a claimant can do any occupation necessarily deviates from the DOT.  *See Pacheco v. Colvin*, 83 F.Supp.3d 1157, 1167 (D. Colo., 2015) (declining to remand because "accepting plaintiff's argument would make illiteracy itself a substitute for disability, which is contrary to both common sense and the Commissioner's regulations"); *Priel v. Astrue*, No. 08-cv-0213, 2010 WL 184329, at *3 (W.D.N.Y. Jan. 15, 2010) (observing that it is "illogical to conclude that the DOT's apparent 'literacy requirement' trumps the testimony of a VE, especially when that VE was asked a proper hypothetical question"); *Lao v. Astrue*, No. Civ. S-06-2714 EFB, 2008 WL 3863698, at *12 (E.D. Cal., Aug. 18, 2008) (rejecting plaintiff's contention that his "virtual illiteracy" precluded him from performing jobs with a level one GED language development score because under such a rationale, "not a single illiterate disability applicant would be qualified for any of the jobs listed in the DOT").

Indeed, as the Commissioner notes, Plaintiff's past relevant work as a forklift operator conflicts with the DOT because it requires Language Development Level 1; yet, Plaintiff was able to perform this job for several years.  Courts are split on how much

12

weight to afford such evidence, however. *Compare Olive v Colvin*, 2017 WL 1653303, at *7 (observing that while a claimant's past work "might be evidence that his previous jobs, in practice, did not require Language Level Development 2, this evidence does not bear on whether the jobs cited by the vocational expert do or do not, in practice, require Language Level Development 2"), *and Cortes v. Colvin,* No. 2:15cv227-GJS, 2016 WL 1192638, at *2 (C.D. Cal., Mar. 28, 2016) (observing same), *with Warf v. Shalala*, 844 F. Supp. 285, 290 (W.D. Va. 1994) (claimant previously performed other jobs that also required minimal level of literacy, and claimant would not qualify for any job listed in Dictionary if minimal literacy requirement was adhered to).

The Fifth Circuit has not addressed literacy conflicts in this precise context, but it has noted the inherent flaws in similar arguments. In *Charles v. Astrue*, 291 F. App'x. 552, 555 (5th Cir. 2008) (unpublished), the Court declined to remand because the DOT conflicted with a vocational expert's opinion that an immigrant, functionally illiterate in English, could perform work in the national economy. The Court noted that although a conflict existed, "the ALJ explained that he did not rely on the DOT because the argument that illiteracy in English precluded employment, taken to its logical conclusion," would mean that most immigrants would automatically qualify for benefits. *Id.* "Rather, as the vocational expert testified, and the regulations suggest, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(i)," the Court reasoned that "persons who are functionally illiterate in English can still perform a significant number of unskilled jobs in the national economy, including the ones identified by the vocational expert." *Id.* Notably, it is unclear whether the Fifth Circuit would apply the same rationale here.

13

Unlike the ALJ in *Charles v. Astrue*, the ALJ in this case did not obtain an explanation from the vocational expert or otherwise resolve the conflict as required by SSR 00-4p.

In similar cases, the Ninth Circuit has generally remanded when an ALJ fails to explain or resolve the inconsistency in cases where the claimant is illiterate or unable to communicate in English. *See Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001) (acknowledging that a "claimant is not per se disabled if he or she is illiterate," but reversing because ALJ failed to explain the decision to deviate from the DOT's language); s*ee also Cortes,* 2016 WL 1192638, at *2 (remanding where ALJ did not resolve conflict between claimant's RFC and Language Level, but expressing "significant doubts that a remand will resolve in Cortes's favor"); *Linares v. Colvin,* No. CV 14-3524-JC, 2014 WL 5528404, at *6 (C.D. Cal., Oct. 31, 2014) (observing there may be a sufficient explanation for the apparent inconsistency between plaintiff's language abilities and the Language Development levels of the representative occupations, but declining to affirm because ALJ did not provide the explanation in the administrative decision); *Clark v. Astrue,* No. EDCV 10-0992–JEM, 2011 WL 1544204 at *6  (C.D. Cal. Apr. 25, 2011) (noting "[n]umerous cases" reversing Commissioner where ALJ failed to explain inconsistency between a claimant's language limitations and Language Level 1 and 2 jobs") (collecting cases).

Similarly, at least two district courts within the Fifth Circuit have also remanded where there was no on-the-record explanation for the inconsistency between the vocational expert's testimony and the literacy requirements under the DOT. *See Edmond v. Berryhill,* No. 3:18cv0677-BH, 2019 WL 1424612 (N.D. Tex., Mar. 29, 2019)

(explaining that although the ALJ asked about conflicts, the vocational expert's response was in direct conflict with the DOT, and the ALJ's failure to discover and address the conflict was prejudicial because further questioning and clarification from the vocational expert "might have led to a different decision") (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)); *Olive v. Colvin*, 2017 WL 1653303, at *7 ("[T]here is no way a person who cannot read or write can perform a job that actually requires a person to read 190-215 words per minute and write compound and complex sentences. If the jobs cited by the vocational expert here do not, in practice, require such reading and writing, she failed to say so on the record.").

But despite arguments based on SSR 00-4p, some courts have still declined to remand where the claimant did not raise a literacy discrepancy until after the administrative hearing. In *Carey v. Apfel*, the Fifth Circuit held that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." 230 F.3d at 146-147. Citing *Carey,* the court in *Spears v. Colvin*, No. 3:14CV763 TSL-RHW, 2015 WL 7307247, at *5 (S.D. Miss., Oct. 16, 2015), concluded that "the ALJ was entitled to rely on the VE's testimony where illiteracy was one of the vocational factors provided in the ALJ's hypothetical, and where claimant's counsel failed to raise at the administrative hearing, the alleged discrepancy between the VE's testimony and the DOT." (report and recommendation *adopted by*, 2015 WL 7345758 (S.D. Miss. Nov. 19, 2015) (citing

15

*Carey,* 230 F.3d at 146-47 *and Donahue v. Barnhart,* 279 F.3d 441, 446–47 (7th Cir. 2002)).  The *Spears* Court noted that "illiteracy is a vocational factor, not an impairment, that existed prior to the onset of Spears's alleged disability." 2015 WL 7307247 * 5, (citing 20 C.F.R. § 404.1564(b)(1)).

The Seventh Circuit has also declined to remand where the claimant did not raise the literacy discrepancy until after the hearing.  *See Donahue,* 279 F.3d at 445 ("It turns out that whoever wrote the Dictionary believes that basic literacy (defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences) is essential for every job in the economy . . . . The vocational expert obviously did not agree—nor did Donahue's former employer, for he was no more literate during the 23 years he drove a garbage truck than he is today.  Illiteracy is not a progressive disease.") (internal citations omitted).  *But see Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006) (claimant's failure to raise argument at administrative hearing that ALJ failed to explore inconsistencies between vocational expert's testimony and DOT did not constitute forfeiture of such argument, inasmuch as ALJ had burden of making inquiry as to any such inconsistencies).

In this case, Plaintiff concedes that he failed to raise the literacy conflict at the administrative hearing, but he insists the argument is not waived because there was no testimony to prompt cross-examination on the issue.  This is undermined by both the transcript and Plaintiff's assertion that the conflict is "imminently apparent." *Windham v. Colvin*, No. 3:14cv250 TSL-JCG, 2015 WL 5224398, at *1, *7 (S.D. Miss. Sept. 8, 2015) (adopting report and recommendation that "it remains questionable that a conflict was

'apparent' [under SSR 00-4p] because Windham failed to raise the issue"). The transcript reflects that both the ALJ and counsel questioned Plaintiff concerning the extent of his reading and writing abilities in the vocational expert's presence at the administrative hearing. In a subsequent hypothetical, the ALJ asked the vocational expert whether an illiterate individual with plaintiff's residual functional capacity could perform the cited jobs, and the vocational expert responded affirmatively. Counsel then cross-examined the vocational expert but limited his questions to the inconsistencies between Plaintiff's physical limitations and the DOT. Neither the vocational expert, the ALJ, nor counsel deemed it necessary to further develop the literacy conflict at the administrative hearing. *Carey*, 230 F.3d at 146-47.

But as this Court has noted, it is not entirely clear how broadly *Carey's* waiver rule should apply to unexplained conflicts. *Ruffin,* 2017 WL 536549, *6. Some district courts have limited its application to indirect or implied conflicts. *Id.* (citing *Dunn v. Colvin*, No. 4:12-CV-496-Y, 2013 WL 4756377, at *5 n.3 (N.D. Tex. Sept. 4, 2013); *Romine v. Barnhart*, 454 F. Supp. 2d 623, 631 (E.D. Tex. 2006)). However, the Fifth Circuit has continued to apply the waiver rule post *Carey*, despite arguments based on SSR 00-4p, even when the conflict is direct or apparent. *Ruffin,* 2017 WL 536549, * 6 (collecting cases). And, despite indicating in *Graves* that a direct conflict is sufficient to establish prejudice, the Fifth Circuit observed that *Carey* has not been overruled. *Id.* at *5 (citing *Graves*, 837 F.3d at 593 n.1).

Notwithstanding, given the uncertainty of whether *Carey's* waiver rule applies when the conflict is both apparent and unexplained, the undersigned's reading of *Graves*

17

compels a finding that Plaintiff has established prejudice and remand is required. Although the ALJ complied with SSR 00-4p in part, he failed to elicit an on-the-record explanation from the vocational expert as to why the jobs identified could be performed by an illiterate person and/or otherwise resolve the conflict. This failure prejudiced Plaintiff because had the ALJ fully developed the record, "the additional evidence might have led to a different decision." *Newton*, 209 F.3d at 458. Upon further questioning, for instance, the vocational expert might have identified other occupations or explained why the jobs identified could, in practice, be performed by an illiterate individual despite conflicting with the DOT. *See, e.g., Edmond,* 2019 WL 1424612, * 14 ("Questions regarding the conflict could have clarified that the VE's testimony was based on Plaintiff's prior past work, as the Commissioner alleges, or that Plaintiff was incapable of working as a warehouse worker"); *Olive v. Colvin*, 2017 WL 1653303, at *7 ("had the vocational expert identified the conflict for the ALJ, he might have determined that the DOT should prevail if the vocational expert's explanation had been unsatisfactory"). Neither the DOT nor the vocational expert's opinion automatically controls, and absent such evidence, the undersigned cannot conclude that ALJ's step-five finding is supported by substantial evidence.

    For all the above reasons, the undersigned recommends the ALJ's decision be remanded for revaluation of step-five, so that the ALJ may conduct further proceedings pursuant to SSR 00-4p consistent with this decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED on July 17, 2019.

                                                       s/ Linda R. Anderson  
                                              UNITED STATES MAGISTRATE JUDGE